IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PEOPLE FOR THE ETHICAL  
TREATMENT OF ANIMALS, INC.,         *
                                     *
    Plaintiff,                      *
                                     *
    v.                              *   Civil Action No. 8:25-cv-00736-PX
                                     *
                                     *
NATIONAL INSTITUTE OF MENTAL         
 HEALTH *et al.*,                    *
                                     *
    Defendants.

******

**MEMORANDUM OPINION**

Pending is Defendants National Institute of Mental Health ("NIMH"), National Institutes of Health ("NIH"), Acting Director of NIMH Andrea Beckel Mitchener and Acting Director of NIH Jayanta Bhattacharya (collectively, "Defendants")' motion to dismiss Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA")'s Complaint. ECF No. 21.[1]  The Court finds no need for a hearing. *See* D. Md. Loc. R. 105.6. For the following reasons, the Court GRANTS the motion.

    **I.**    **Background**

According to PETA, the Elisabeth Murray lab, under the aegis of Defendants, conducts "torturous and useless" experiments on rhesus macaques ("macaques") related to improving human mental health treatments. ECF No. 1 ¶¶ 29–53. This suit, however, does not challenge Defendants' treatment of the macaques. Despite the Complaint's broadside attack on animal

---

[1] Defendants Andrea Beckel Mitchener and Jayanta Bhattacharya are automatically substituted as parties to this action, replacing Defendants Shelli Avenoli and Matthew J. Memoli, respectively. *See* Fed. R. Civ. P. 25(d).

research generally, PETA brings a narrow claim that Defendants have denied PETA's August 2024 request for installation of a 24-7 audio visual live feed (the "live feed") of the macaques who are currently housed at the laboratory, in violation of PETA's First and Fifth Amendment rights. *Id*. ¶ 8; ECF No. 1-2 at 3.  PETA's August 2024 request demanded that the live feed "contain audio to hear the macaques' vocalizations and clear video sufficient to see the macaques' body postures, gestures, facial expressions, and other observable communications while in their cages, in the presence of laboratory staff, when being collected and prepared for experimentation, and while being experimented on." ECF No. 1-2 at 3.  PETA's singular justification for demanding the live feed is its purported First Amendment right to "listen" to the macaques' "speech" and "communications." ECF No. 1 ¶¶ 8, 103–18.

Defendants denied PETA's live feed request, explaining that a live feed does not exist in the laboratory, and any video that does exist is "closed-circuit television, which is not capable of being transmitted to third parties." ECF No. 1-3 at 2–3.  Defendants also acknowledged that they gather experiment-related footage limited to "active observational experimentation" for note-taking purposes, and that the laboratory usually does not retain the footage for future use. *Id*. at 3.  Defendants thus suggested that PETA submit a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., request for any existing audiovisual recordings of the macaques. *Id.*

PETA now maintains that FOIA will not "satisfy PETA's First Amendment right to receive communications directly" from the macaques, whom PETA avers are "willing speakers" through the macaques' various communicative behaviors. ECF No. 1 ¶ 62.  From this, PETA contends that it maintains a First Amendment right as a "listener" of the macaques to a live feed, *id.* ¶¶ 103–110, and companion Fifth Amendment "liberty and property interests" in the same "open channel of communication" between it and the macaques, *id*. ¶¶ 111–115.  PETA asks this Court to declare

2

Defendants' denial of the live feed a constitutional violation of the First and Fifth Amendments, to order Defendants to produce such footage, and to enjoin Defendants from violating PETA's constitutional rights in the future. *Id*. at 35–36.

Defendants move to dismiss the Complaint on jurisdictional and sufficiency grounds pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 21. Because the Court dismisses the claims for lack of jurisdiction, as more fully detailed below, it cannot reach the merits of the claims. Thus, the Court confines its analysis to why this Court cannot reach the claims for want of jurisdiction.

## II.     Standard of Review

Jurisdictional challenges must be resolved in advance of any merits analysis. *See* Fed. R. Civ. P. 12(b)(1); *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009); *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The party who asserts jurisdiction bears the burden of establishing its existence. *See Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). The Court considers the complaint facts, viewed most favorably to the plaintiff, *see Lovern*, 190 F.3d at 654; *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005), and may consider extrinsic evidence to ascertain whether it has jurisdiction to hear the case. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## III.    Analysis

Defendants make two jurisdictional arguments: first, that PETA lacks Article III standing because it has not suffered an injury from the denial of the live feed; and second, that Defendants, as federal agencies, enjoy sovereign immunity from suit. ECF No. 21 at 15–25. Because "both of the infirmities identified . . . go to the question of jurisdiction[,] . . . this court can turn to either

issue alone to resolve this case." *City of New York v. United States Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019).  The Court first addresses whether sovereign immunity protects Defendants from suit.

### A.  Sovereign Immunity

The United States and its agencies enjoy sovereign immunity from suit absent consent to be sued.  *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005).  It may give such consent, or waive its immunity, through enacting legislation.  *See Kerns v. United States*, 585 F.3d 187, 193–94 (4th Cir. 2009). Waiver is "strictly construed" in favor of the United States.  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Accordingly, Defendants, as federal agencies, enjoy "a presumption of immunity from the present lawsuit." *Robinson v. United States Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019).  *See also Food Town Stores, Inc. v. E.E.O.C.*, 708 F.2d 920, 922 (4th Cir. 1983). The same immunity also extends to agency officers when suit is "nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *State of Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam).

Defendants make the straightforward argument that PETA has failed to demonstrate any waiver of immunity arising from the alleged First and Fifth Amendment violations.  ECF No. 21 at 15–18.  PETA singularly responds that even though it has not brought a formal claim under the Administrative Procedure Act ("APA"), the Court may nonetheless construe congressional waiver of suit for any challenges to final agency action as waiving immunity for the constitutional claims here.  ECF No. 23 at 29 & 33.  *See* 5 U.S.C. § 702.

The Court assumes the validity of PETA's contention that Congress can waive immunity for constitutional challenges even if not expressly brought as APA violations. *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 86 (D. Md. 2021) (citing *Michigan v. U.S. Army Corps of Eng'rs*,

4

667 F.3d 765, 775 (7th Cir. 2011)) (Section 702 applies to non-APA constitutional challenges) (collecting cases). *See also Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996). For PETA to "benefit from the waiver" as articulated in § 702 of the APA, PETA must demonstrate that the claims are judicially reviewable under § 704. *Standage*, 526 F. Supp. 3d at 86. Section 704 allows judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. *See also U.S. Army Corps. of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016); *Maryland v. Corp. for Nat'l & Cmty. Serv.*, 785 F. Supp. 3d 68, 90 (D. Md. 2025) (citing *Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024)).

PETA's claims are not reviewable under § 704 unless they meet three criteria. *City of New York*, 913 F.3d at 431. First, the challenged agency action must be "specific" and "discrete," rather than a "broad programmatic attack," on government policies or procedures. *Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 64 (2004). This requirement safeguards against judicial encroachment into agency functions were the court to adjudicate "generalized grievances asking to improve an agency's performance or operations." *City of New York*, 913 F.3d at 431.

Second, the challenged agency action must be "final" in that the action "determin[ed] rights and obligations," of others, *id.* (quoting *Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438, 445 (4th Cir. 2014)), or from which "legal consequences will flow," *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). *See also Food Town Stores*, *Inc.*, 708 F.2d at 923 (noting finality from a deprivation of a "statutory right" and explaining "the focus should be on the nature of the consequence accruing from the [agency's] action, not on what stage in the proceedings the action occurred"). The determination of rights and obligations stemming from the agency's action

must have "an immediate and practical impact . . . or alter the legal regime in which it operates." *City of New York*, 913 F.3d at 431 (quoting *Golden & Zimmerman LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010) and *Bennett*, 520 U.S. at 178) (internal quotation marks omitted).

Third, where, as here, the plaintiff seeks to "compel agency action," the claim may proceed only if such action has been "unlawfully withheld or unreasonably delayed." *City of New York*, 913 F.3d at 429 (quoting 5 U.S.C. § 706(1)). Plaintiffs must identify the agency action as one that is "legally required." *Id.* (quoting *Norton*, 542 U.S. at 63).

In short, judicial review is available "only when acts are discrete in character, required by law, and bear on a party's rights and obligations." *Id.* at 432. Because the challenged agency action—namely Defendants' denial of PETA's request for a live feed—satisfies none of the necessary preconditions for judicial intervention, dismissal is compelled.

First, the challenged action is not discrete or specific. ECF No. 1-2 at 2–3. PETA attempts to cast the agency action as a singular denial of a simple request. It is not. As Defendants explained in their denial letter, the request runs counter to the established protocol of recording the macaques in various settings, to include during active experimentation. ECF No. 1-3. Defendants further explained that the lab uses closed circuit-video to monitor the macaques, but the technology "is not capable of being transmitted to third parties." *Id.* To accommodate PETA's request, Defendants would have to retool both their programmatic aims for recording and their audio-visual capabilities. In this important respect, the challenged agency action is neither discrete nor specific, but rather cuts to the very kind of programmatic decisions that would require reconciling needs of the experimenters with the public's video access of the same. "Solving" this problem "likely require[s] expertise" across several disciplines, to include information technology, the communications of the monkeys, and the needs of the experimenters to maintain integrity in their

6

experimentations.  *City of New York*, 913 F.3d at 433.  This is "exactly the sort of 'broad programmatic' undertaking for which the APA has foreclosed judicial review."  *Id.*

Second, PETA has not shown that Defendants' denial of PETA's request has determined PETA's "rights" or "obligations."  *City of New York*, 913 F.3d at 431.  PETA contends, with no support, that it maintains a First Amendment right to "receive" the "communications" of the macaques and a Fifth Amendment right to be heard on its request for an "open channel of communication."  ECF No. 1 ¶¶ 1, 11–18.  But it cites neither binding nor persuasive authority that animal communications implicate any such rights, certainly not PETA's rights as "listener." *Cf. Lamont v. Postmaster Gen. of U.S.*, 381 U.S. 301 (1965) (right to receive communist propaganda mail); *Kleindienst v. Mandel*, 408 U.S. 753 (1972) (right to hear noncitizen's speech); *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n*, 475 U.S. 1 (1986) (right to hear commercial speech about wildlife conservation).  Nor does PETA have a "life, liberty, or property" interest in the asserted "open channel of communications."  Thus, the denial of such request could not have altered any "rights" of PETA's.  *Mallette v. Arlington Cnty. Emps. Supplemental Ret. Sys. II*, 91 F.3d 630, 634 (4th Cir. 1996) (explaining that to adequately allege a Fifth Amendment procedural due process claim, a plaintiff must show that she was deprived of "something that fits into one of the three protected categories: life, liberty, or property"); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.").

But more to the point, the upshot of PETA's argument requires this Court to credit that PETA retains some entitlement to unfettered access to information that is within the control of a governmental entity.  ECF No. 23 at 31.  PETA does not.  Rather, the demand for open access to laboratories "in the manner sought" by PETA remains "a question of policy which a legislative

body might appropriately resolve one way or the other." *Houchins v. KQED*, 438 U.S. 1, 12 (1978). The Constitution is plainly "[not] a Freedom of Information Act." *Id.* at 14.

Third, PETA has not persuaded the Court that Defendants are "required by law" to broaden the scope of their current practices of documenting the macaques.[2] So when Defendants denied PETA's request, they were not acting contrary to that which they were "legally required" to provide. Thus, for these reasons, the challenged agency action is simply not cognizable under the APA as a "final agency action." Defendants enjoy sovereign immunity from suit and the claims must be dismissed for lack of jurisdiction.

### B. No Article III Standing

Alternatively, the Court dismisses the claims for lack of standing. The Court retains the power to hear only live cases and controversies. U.S. Const. art. III, § 2. *See also Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 715 (4th Cir. 2015). For a party to maintain constitutional standing to sue, it must demonstrate as much. *Davis v. FEC*, 554 U.S. 724, 733 (2008) (citations omitted). Standing at the dismissal stage requires the Court to "accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013). The plaintiff must marshal sufficient facts to make plausible three basic requirements. *See Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). First, that plaintiff has suffered an injury in fact, that is "concrete and particularized," and actual or imminent, not conjectural or hypothetical. Second, that the injury is "fairly traceable" to the

---

[2] PETA also seems to suggest that this Court retains separate jurisdiction under the Mandamus Act, 28 U.S.C. § 1361. ECF No. 1 ¶ 10. But like the APA, the Court may compel agency action under the Mandamus Act only where "an agency has a clear duty to act." *Lovo v. Miller*, 107 F.4th 199, 216 (4th Cir. 2024) (citing *Murray Energy Corp. v. Adm'r of Env't Prot. Agency*, 861 F.3d 529, 537 n.4 (4th Cir. 2017)). *See also Sleeth v. Dairy Prods. Co. of Uniontown*, 228 F.2d 165, 167 (4th Cir. 1955) (To obtain mandamus relief, the plaintiff must show that "there is a clear legal right to the performance of a particular act or duty[.]"). PETA has failed to make plausible any agency "duty" to outfit its facilities so that Defendants could give PETA a live feed. Thus, for the same reason, the Court lacks mandamus jurisdiction.

challenged action. And third, that the injury can be "redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

PETA asserts that its injury lies in its inability to receive "communications" from the macaques—the "willing speakers who regularly communicate with anyone who listens"—because of Defendants' refusal to set up the live feed. ECF No. 23 at 34 (claiming injury due to "restriction of PETA's receipt of those macaques' communications). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A "legally protected interest" is one that "aris[es] from constitutional, statutory, or common law." *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 366 (4th Cir. 2015) (citing *Lujan*, 504 U.S. at 578). "Thus, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents." *Id.* (quoting *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991)).

PETA's claimed injury to its First Amendment right to "listen" is not, as pleaded, a legally protected interest sufficient to confer standing.[3] Although the First Amendment "protects both a speaker's right to communicate information and ideas to a broad audience and the intended recipients' right to receive that information and those ideas," *Rossignol v. Voorhaar*, 316 F.3d 516, 522 (4th Cir. 2003), the narrower claimed right to "*receive* speech" requires the plaintiff "show that there exists a speaker willing to convey the information to her," *Stephens v. Cnty. Of*

---

[3] Likewise, PETA has also failed to plead a legally protected Fifth Amendment right in open channels of communications with the macaques sufficient to confer standing. PETA does not have a "legitimate claim of entitlement" to the communications and cites to no authority that suggests otherwise. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Rather, PETA merely has a "unilateral expectation" of such communications, which is insufficient to establish a legally protected interest under the Fifth Amendment. *Id.*

*Albemarle, VA*, 524 F.3d 485, 492 (4th Cir. 2008) (emphasis added), and that "the listener" maintains "a concrete, specific connection to the speaker," *Murthy v. Missouri*, 603 U.S. 43, 75 (2024).  Nowhere does PETA establish any authority whatsoever for the extraordinary proposition that the macaques' sounds and movements constitute protected speech to which a companion right-to-listen exists.  Rather, PETA relies on a legion of inapposite law concentrating on the public's right to receive *human speech*.  *See Lamont v. Postmaster Gen. of U. S.*, 381 U.S. 301 (1965) (right to access foreign publication); *Kleindienst v. Mandel*, 408 U.S. 753 (1972) (right to hear the speech of Belgian journalist and Marxian theoretician); *Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc*. 425 U.S. 748 (1976) (rights of consumers of prescription drugs to receive the communications of licensed pharmacists regarding drug prices).  But PETA gives the Court nothing that comes close to establishing a constitutional right to receive "non-human primate" sounds or behaviors.

Nevertheless, PETA argues that the macaques can "communicate" their sufferings in complex ways.  ECF No. 1 ¶¶ 17–46.  But PETA does not explain how it has a "specific connection" to the macaques, as speakers, beyond the general averments that the macaques have the capability of communicating to humans.  Thus, even if the Court hypothetically accepts that macaques are "willing to convey" information to PETA with a form of constitutionally recognized speech, PETA has failed to articulate a "concrete" and "specific connection" to the macaques such that PETA has suffered a legally protected interest in listening to the macaques sufficient to confer standing.  *Murthy*, 603 U.S. at 75.

PETA contends that the Supreme Court's decision in *Murthy v. Missouri*, 603 U.S. 43 (2024) reaffirms its "right to listen" theory.  ECF No. 23 at 33–34.  But *Murthy* hurts PETA's cause more than it helps.  There, social media users brought a claim against Executive Branch

10

agencies for the Government's alleged social media censorship during the COVID-19 pandemic. *Id.* at 50–51. The social media users pressed a "right to listen" to the "content of other speakers on social media." *Id.* at 74–75. Thus, said the plaintiffs, their injury arose from the restrictions imposed on "countless other social-media users." *Id.* at 75. The Supreme Court rejected the contention as "startingly broad," and which, if adopted, "would grant all social-media users the right to sue over *someone else's* censorship," so long as the plaintiff-users claim an interest in such speech. *Id.* (emphasis original). In so concluding, the Court emphasized that it has "never accepted such a boundless theory of standing." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99 (2013)).

Like the plaintiffs in *Murthy,* PETA relies on a "boundless" theory of the "right to listen" to animal sounds and behavior. As in *Murthy*, the scope of this theory is breathtaking; it would confer standing to sue on anyone who claims interest in the sounds and movements that animals use to communicate with each other. This is the very kind of overly broad articulation of "injury" that the *Murthy* Court eschewed. PETA, therefore, has not pointed to any legal authority which supports a constitutionally protected interest in receiving communications from the macaques.[4] Thus, PETA lacks standing.

---

[4] To the extent the Court can discern a cognizable injury, it would be based on a "right of access" theory, which PETA does not allege, due to PETA's inability to access the non-existent live feed of the macaques. *See, e.g.*, *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) (rejecting a First Amendment "right of access" to interview and record inmates); *Am. C.L. Union Found. of S.C. v. Stirling*, 123 F.4th 170, 176–77 (4th Cir. 2024) (same). But the Supreme Court has made clear that "[t]here is no discernible basis for a constitutional duty to disclose, or for standards governing disclosure of or access to information," nor is there a "constitutional right to have access to particular government information, or to require openness from the bureaucracy." *Houchins*, 438 U.S. at 14. Thus, a claim based on PETA's unfettered entitlement to live-feed access of a government laboratory, too, would fail.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion and dismisses the Complaint without prejudice for lack of subject matter jurisdiction. Because the Court lacks jurisdiction, it cannot reach the sufficiency of the claims. A separate Order follows.

 2/13/26                                                              /s/                      
Date                                                          PAULA XINIS
                                                              United States District Judge